UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,    Case No. 19-cr-20305

        Plaintiff,    HON. MARK A. GOLDSMITH

v.

D-1 DOMINIQUE DIXSON,

        Defendant.
_____/

**UNITED STATES' MEMORANDUM WITH
PROPOSED FINDINGS OF FACT AND CONCLUSONS
OF LAW FOR THE COURT TO DENY DEFENDANT'S MOTION [37]**

Defendant Dominique Dixson has been charged with felon in possession of a firearm in violation of 18 U.S.C § 922(g)(1). First Superseding Indictment. R. 21. Before the Court is Defendant Dominique Dixson's Motion to Suppress Social-Media Evidence. Def.'s Mot., R. 37. The United States submitted a response in opposition to Defendant's Motion to Suppress Social-Media Evidence. R. 49. The Court held an in-person evidentiary hearing on the motion June 15, 2021. R. 129, PageID 584.

The United States submits the following proposed findings of fact and conclusions of law that it respectfully asks the Court to adopt:

## I. PROPOSED FINDINGS OF FACT

### A. BACKGROUND

On April 17, 2019, the government began its investigation into Defendant Dominique Dixson after ATF investigators obtained access to the defendant's Instagram account. Compl., R. 1 at ¶ 7. Upon investigation into Defendant's Instagram account, agents discovered a posted photo showing Mr. Dixson holding up paper targets at Action Impact, a firearm shop and gun range located in Eastpointe, Michigan. *Id.* It is undisputed that the Instagram account "kiing_messiah" was used and operated by the defendant. R. 17 at 2. Investigation into Dixson ultimately resulted in his arrest while in possession of the firearm and extended magazine previously purchased at Action Impact. R. 31 at 14.

### 1. Instagram

Instagram is a photo and video sharing social networking site. Instagram offers account users the option to create either a public or a private account. Instagram Help Center -Instagram Features, available at https://help.instagram.com/. By default, Instagram accounts are public but individual users can choose to make their accounts private. *Id*. If an individual elects to keep their account on public, their profile and posts can be seen by anyone, including members of the public that may not have an Instagram account. *Id.* When an individual selects their account to be private, only the followers an individual has approved can see what is shared, including photos

and videos, your followers and following lists. *Id*. An individual who hosts a private account, will need to accept or decline follow requests that are sent to him or her. However, both private and public accounts contain certain information, viewable to all Instagram users, such as the user's screenname, profile picture and personalized information under the profile picture. R.37 at 3. Follow requests appear on the users "Activity" page, which leaves the account holder the decision to approve or ignore the request. *Id*.

**2. Agent Testimony**

At the hearing, the ATF case agent testified that he has received extensive training at the federal law enforcement academy and additional training involving NIBIN and the use of social media in gang-related activities. ECF No. 129: Trans., PageID 590. Agent testified that he has used an undercover Instagram account to investigate gang activity and firearm violations. ECF No. 129: Trans., PageID 591. The agent testified that based on his training and experience, the average user can share posts from other user's accounts. EFC No. 129: Trans., PageID 600. Additionally, these accounts do not require permission to share content such as profiles, pictures, videos and posts and have the potential of going viral at any given time. EFC No. 129: Trans., PageID 600.

Agent testified that ATF had an open investigation in Defendant Dominique Dixson and utilized Instagram's search function to identify the social media

associated with Mr. Dixson. EFC No. 129: Trans., PageID 590. He located the "kiing_messiah" account that belonged to Mr. Dixson and was able to view his profile. EFC No. 129: Trans., PageID 596. There was no search warrant. EFC No. 129: Trans., PageID 598.

The agent could not remember whether Defendant's Instagram account was public or private. *Id.* at PageID 606. The agent testified, however, that if Dominique Dixson was operating a private account, in order for the agent to have access to Mr. Dixson's content, Dixson would have needed to approve his friend request. EFC No. 129: Trans., PageID 595. The agent testified that he was able to view Mr. Dixson's content. Based on his training and experience, agent testified that in either scenario, whether Dixson was originally operating a public account or hosted a private account, he was an actual follower of Mr. Dixson. Agent testified that this fact is evidenced by the icon next to messages where a little person with a checkmark appears, indicating said individual follows the account holder. EFC No. 129: Trans., PageID 598. It was after the agent gained access to Mr. Dixson's account, that he discovered photos of Mr. Dixson holding up a target range up in front of a gun range. EFC No. 129: Trans., PageID 598.

3. Dixon's Instagram Account

At the time of the investigation, Defendant was using the Instagram handle "kiing_messiah." A screenshot taken from the testifying agent, provided the court

with information depicting what data was visible to the public from Mr. Dixson's Instagram account at the time access was obtained. Ex. 1. That day his profile looked like this:



As referenced by Ex. 1, the agent reported that any individual using Instagram could see the following information when clicking on Defendant's "kiing_messiah" account: 51 posts made had been made by the defendant uploaded as either a photo or video, the defendant had 50 "followers" and was following 11 people. The profile's biography contained "MOB", which is believed to stand for 622 M.O.B. Assassin Pirus in Metro Detroit, a Blood sect gang. His nickname was listed as

"Mr.Shxxter_Lo-Red" believed to be in reference to his position as a gun shooter aka killer for the gang. Additionally, Defendant referenced red, a color likely signifying his gang affiliation, further supported by his red and black outfit in Defendant's profile thumbnail photo.

It was established that Defendant and the case agent's undercover account, had 9 out of 11 friends in common. The screenshot taken by the agent confirmed that Defendant Dominique Dixson had accepted his "follow" request, evidenced by the symbol of a person with a checkmark next to it. Ex. 1. After gaining access to Defendant's account, monitoring of the account revealed several incriminating videos posted thereafter.

## II. PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A person has a constitutionally protected reasonable expectation of privacy when they have both a subjective expectation of privacy and that expectation is one that society recognizes as reasonable. *See Katz v. United States*, 389 U.S. 347 (1967). In areas where an individual has a legitimate privacy interest, the Fourth Amendment prohibits warrantless search subject to limited exceptions. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "Where valid consent is given, [however,] a search is permissible under the Fourth Amendment[,] even

without a warrant or probable cause." *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "In order to challenge a search or seizure as a violation of the Fourth Amendment, a person must have had a subjective expectation of privacy in the place or property to be searched which was objectively reasonable." *Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967).

### A. Defendant did not have a reasonable expectation of privacy in his Instagram post shared with approximately 50 followers.

The general expectation of privacy as to the contents of an individual's computer or smart phone is not absolute. *United States v. Conner*, 521 F. App'x 493, 497 (6th Cir. 2013). It may be extinguished when information is transmitted over the internet. *See Guest v. Leis*, 255 F. 3d 325, 333 (6th Cir. 2001) ("Users would logically lack a legitimate expectation of privacy in the materials intended for publication or public posting.").

Social media platforms, more specially Instagram, are intended for obtaining public exposure, expressly designed to share information publicly, unlike emails, letters, and phone- calls. "Public exposure of information in this manner defeats an objectively reasonable expectation of privacy under the Fourth Amendment." Conner, 521 F. App'x at 497 (citing Katz v. United States, 389 U.S. 347, 31 (1967)).

A leading case on this topic is *United States v. Meregildo*, 883 F. Supp.2d 523 (S.D.N.Y. 2012). In that case, one of the Defendants "friends" shared the defendant's profile with a government agent. *Id.* At 525-26. The *Meregildo* court ultimately held that despite the defendant's effort to protect his privacy by only sharing his account with friends, "he had no justifiable expectation that his 'friends' would keep his profile private." *Id.* at 526. Additionally, the court held "the wider his circle of 'friends,' the more likely [his] post would be viewed by someone he never expected to see them.". *Id.* The court reasoned that defendant's "legitimate expectation of privacy ended when he disseminated posts to his 'friends' because those 'friends' were free to use the information however they wanted." *Id.* The defendant shared posts at his peril. Once the defendant surrendered his expectation of privacy, the government did not violate his Fourth Amendment. *Id.*

The present matter parallels these standards. Dixson surrendered any expectation of privacy in his Instagram posts the moment he made his posts available to his "followers." Although the government obtained its information in *Meregildo* through a cooperating witness, it makes no difference how the agent obtained the post after the moment the Defendant posted onto his account. The moment Defendant posted a video or pictures for his followers, that is when the defendant lost his expectation of privacy in that information. *Meregildo*, 883 F. Supp. 2d at 526. Here, once Defendant shared posts on Instagram to his 50 followers, each of

those followers had the opportunity to share the information as well through reposting, sharing screenshots, or simply showing their phone to others. Dixson's "subjective intention not to share his [posts] does not create an objectively reasonable expectation of privacy" in the face of widespread access to his account. *See Conner*, 521 F. App'x at 497.

In this day in age, social media users are aware of the fact that anything they post on a social media account could easily be shared with anyone or even go "viral." In particular, gang members and other criminals are aware of the use of social media by law enforcement to collect evidence. In Detroit, the Detroit News published a nine-chapter series called Death by Instagram highlighting the 7 Mile Blood RICO activities. Defendants, especially in light of their Blood affiliation, in this case were well aware of the risk of posting things on Instagram and did so at their peril. Dixson was aware of his loss of privacy on Instagram, which is indicated by the number of followers he allowed to see anything he had to post. At a minimum, Dixson knew that at least 50 people could see what he was sharing. While Dixson claims that he had his account set to private, he had no legitimate expectation of privacy in posts he made available to his 50 followers.

### B. Defendant expressly consented to sharing his Instagram post with law enforcement by approving the "follow request."

Even if the Court determines that Dixson had a reasonable expectation of privacy in his Instagram account, Defendant's motion should be denied because, if his

account was set to private, he approved his followers, giving them access to his Instagram posts.

Another leading case in the social media realm is *United States v. Gatson*, 2014 WL 7182275 (D.N.J. Dec. 16, 2014). In that case, like in this case, law enforcement used an undercover account to become an Instagram "follower" of the defendant. *Id*. at *22. The defendant accepted the request to "follow" his account. As a result, law enforcement was able to view the defendant's posts. The Court held that "[n]o search warrant is required for the consensual sharing of this type of information" and denied the defendant's motion to suppress. *Id*. (citing *Meregildo*, 883 F.Supp.2d 523).

The Defendants attempt to dismiss *Gatson* due to the fact that the initial filing by the defendant was *pro se*, however, *Gatson's* holding and analysis are consistent with other opinions in similar cases. *See Everett v. Delaware*, 186 A.3d 1224 (Del. 2018) (holding that the Fourth Amendment does not guard against a person who accepts a follow request and to whom one voluntarily discloses information which may happen to turn out to be an undercover officer or false friend consistent with the *Merigeldo* and *Gaston* cases). Even the law review articles cited by Defendant support the government's interpretation of the law, despite the authors' desire that the law evolve. In particular, the article written by Brian Mund and published in the Yale Journal of Law & Technology cited by Defendant acknowledges that "covert government friends may add and monitor individuals' social networks without

violating the Fourth Amendment." Brian Mund, Social Media Searches and the Reasonable Expectation of Privacy, 19 Yale J.L. & Tech. 238, 254 (2017).

There is long-standing precedent that advances the position that the defendant has no legal recourse when misreading who their friends are or falling prey to undercover operations. This precedent goes back to at least 1966, in *Hoffa v. United States*, 385 U.S. 293 (1966). In that case, the Supreme Court held that the Fourth Amendment protects the security a man relies on when he places himself or his property within a constitutionally protected area. *Hoffa v. United States*, 385 U.S. 293, 301 (1966). It does not protect an individual's "misplaced belief that a person whom he voluntarily confides his wrongdoing will not reveal it" *Id.* at 302. Ex. 1, Order Denying Motions to Suppress, R. 68, at PageID.408, United States v. Eric Johnson et al., Case No. 19-20271 (E.D. Mich. Sept. 5, 2019).

In the same year, the Supreme Court held in *Lewis v. United States*, 385 U.S. 206, 210 (1966), that the government had an important interest in being able to use undercover agents and that a restriction on that ability would "severely hamper the government." In 1966, the *Hoffa* and *Lewis* cases established the notion that a person does not have a privacy interest in the loyalty of his "friends," even if the "friend" is an undercover agent.

The court must additionally take into account the ruling established in the Eastern District of Michigan, *United States v. Johnson*, No. 14-CR-20119, 2021 WL

1253383 (E.D. Mich. Apr. 3, 2021). In that case, Judge Murphy issued an opinion holding that "[t]here is no Fourth Amendment protection when one voluntarily shares" Instagram profile access with an undercover account. Ex. 1, Order Denying Motions to Suppress, R. 68, at PageID. 408, United States v. Eric Johnson et al., Case No. 19-20271 (E.D. Mich. Sept. 5, 2019).

Here, Dixson chose to post incriminating pictures of himself. He had the power to accept or decline any follow requests on his account. Instagram even provides the ability to completely block and hide from specific users, which Dixson declined to do in this case. Despite his claim in his brief that he only approved a "small group" of people he believed were "family, friends, and potential business partners," see Def.'s Motion, R. 37 at PageID.116, he had 50 followers. He decided to accept the request from an account that turned out to be an ATF agent. His decision to approve a follow without verifying who the person is, was his decision alone. He assumed the risk that he was sharing information with people he did not know. *See United States v. Brooks*, 2012 WL 6562947 (E.D.N.Y. 2012) (holding that the government is entitled to conceal the identity of its agents and defendant's acceptance of a "friend request" from an undercover agent did not implicate defendant's Fourth Amendment rights); see also *United States v. Pollard*, 215 F.3d 643, 649 (6th Cir. 2000) ("[I]t is well established that an undercover officer may gain entrance [to information] by misrepresenting his identity and may gather evidence while there."). The undercover

agent's "follow" request is analogous to an undercover agent knocking on the defendant's door. There is no privacy interest implicated in making a follow request or knocking on a defendant's door. In this case, Dixson approved the follow request or analogously opened the door for the agent. See *United States v. Sawyer*, 786 F.Supp.2d 1352 (N.D. Ohio 2011) (holding that by defendant becoming "friends" with the undercover agent who misrepresented his identity, the defendant gave permission to the agent to access his private information). Defendant claims he had his account set to private. If that is true, he had complete control over his followers. He decided to approve the undercover account and consented to the monitoring, thereby revoking his Fourth Amendment protections.

## CONCLUSION

For these reasons, the Court should deny Mr. Dixson's motion to suppress social-media evidence R. 37.

Respectfully Submitted,

SAIMA MOHSIN
Acting United States Attorney

 /s Mitra Jafary-Hariri
MITRA JAFARY-HARIRI
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9632
mitra.jafary-hariri@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2021, I electronically filed the foregoing response with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s Mitra Jafary-Hariri
MITRA JAFARY-HARIRI
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9632
mitra.jafary-hariri@usdoj.gov