UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 19-20305
        Hon. Mark A. Goldsmith

D-1 DOMINIQUE DIXSON,

        Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT DOMINIQUE DIXSON'S MOTION TO SUPPRESS SOCIAL MEDIA EVIDENCE (Dkt. 37)**

Defendant Dominique Dixson was indicted on the charge of being a felon in possession of a firearm stemming from an investigation that began when federal agents saw pictures of Dixson at a local gun range on his Instagram account. Dixson now moves to suppress the social media evidence (Dkt. 37). The Government filed a response to the motion (Dkt. 49). Dixson did not file a reply brief in support of his motion. The Court later conducted an evidentiary hearing.[1] For the reasons discussed below, Dixson's motion is denied.

---

[1] During the hearing, Dixson insisted that a social media expert could testify as to how to tell whether access had been granted to a private Instagram account. Hr'g Trans. at 41 (Dkt. 129). Although the Court expressed skepticism as to whether such expert testimony would have any relevance, the Court ordered that Dixson could submit an affidavit or declaration from the proposed expert, which the Court would use to determine whether it would be necessary to hold a second session of the evidentiary hearing to hear testimony from the expert. Id. at 42. Dixson failed to submit an affidavit or declaration by the deadline. Accordingly, the Court will not hold a second session.

## I.  BACKGROUND

The Government's investigation into Dixson began when an agent viewed Dixson's Instagram account, "kiing_messiah." Compl. ¶ 7 (Dkt. 1). There is no dispute that this account belongs to Dixson. See Hr'g Trans. at 4–5.

Instagram is a popular mobile phone app used to share digital photos and videos. By default, anyone can see a user's profile and posts. If an individual elects to keep the account public, the individual's profile and posts can be seen by anyone, including members of the public who may not have an Instagram account. However, a user can also choose to make an account private and restrict those who can view posts to approved followers.[2] A user who has a private account must accept another user's "follow" request for the second user to see all of the content on the first user's private account. Even when an Instagram user has a private account, followers of that account can still share information posted on the account. See id. at 17–18. For instance, the user's followers could take a screenshot of a picture that the user posts on his private Instagram account, and the followers could then share the screenshot of the picture by sending it via text message, posting it on any number of social media platforms, or even by printing the screenshot and showing the hard copy of it to other people.

During the evidentiary hearing, Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent Brady Rees testified that while using an undercover agent Instagram account, he searched for the account associated with Dixson and found the "kiing_messiah" account; he then sent a follow request from the undercover agent account to Dixson's account. Hr'g Trans. at 11, 13. Dixson's account had 50 followers. Rees could not remember whether Dixson's account was

---

[2] Instagram, Privacy Settings & Information, https://help.instagram.com/196883487377501 [https://perma.cc/26BF-KL8H].

a public or private account.  However, Rees was able to see all of the content on Dixson's account, which meant that either Dixson's account was public or Dixson had accepted the follow request sent by the undercover agent account.  Id. at 15.  This fact was evidenced by the checkmark icon that appeared on Dixson's account when Rees accessed it through the undercover agent account; the checkmark icon appears only if a user is following the account that the user is viewing.  Id.

Rees viewed pictures on Dixson's account, which included a picture of Dixson holding a gun and shooting practice targets at Action Impact, a firearm shop and gun range.  Id. at 16.  This picture caught Rees's attention because, as a felon, Dixson is not legally allowed to possess firearms.  Resp. at 5.  Based on Dixson's photos, agents visited Action Impact and learned that Dixson and his wife had purchased a Taurus, G2C, 9mm caliber, semi-automatic pistol, along with an extended magazine.  Id. at 5–6.  Video surveillance showed Dixson firing the weapon at Action Impact.  Id. at 7.  Based on the evidence from Action Impact, agents secured a search warrant and later arrested Dixson during a traffic stop, and the Taurus 9mm firearm was found in the glovebox shortly thereafter.  Id. at 10–11.

## II. DISCUSSION

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  The Fourth Amendment "protects people, not places."  Katz v. United States, 389 U.S. 347, 351 (1967).  "When an individual seeks to preserve something as private, and his expectation of privacy is one that society is prepared to recognize as reasonable, [the Supreme Court has] held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause."  Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018) (punctuation modified).  However, "[w]here valid consent is given, a search

is permissible under the Fourth Amendment[,] even without a warrant or probable cause." United States v. Morgan, 435 F.3d 660, 663 (6th Cir.2006) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).

It is immaterial whether Rees gained access to Dixson's account because it was public or because it was private and Dixson accepted the follow request that Rees sent to Dixson from the undercover agent account. Either way, Dixson's motion to suppress fails. If Dixson's account was public, he obviously lacked any reasonable expectation of privacy in the content that he shared on that account, as it could be seen by the entire public—including people who do not even have an Instagram account. See United States v. Meregildo, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012) (holding that a Facebook user had no reasonable expectation of privacy that his Facebook friends would not share the information that the user posted on Facebook). If Dixson's account was private—and even assuming that he had some reasonable expectation of privacy in his private Instagram account—Dixson's approval of the follow request amounted to consent to the search of his Instagram account.

Other courts have reached this exact conclusion under analogous facts. For example, in United States v. Gatson, the court found that the defendant's approval of an undercover agent's follow request—which provided access to the defendant's Instagram account—constituted valid consent and obviated the need for a warrant. No. 13-705, 2014 WL 7182275, at *22 (D.N.J. Dec. 16, 2014), aff'd, 744 F. App'x 97 (3d Cir. 2018). Further, in United States v. Sawyer, the court held that by voluntarily making files available to his "friends" —who included an undercover agent—on a peer-to-peer sharing network, the defendant consented to a search of those files. 786 F. Supp. 2d 1352, 1356 (N.D. Ohio 2011).

Dixson argues that he did not consent to the search of his Instagram account because the Government's covert-following strategy (i.e., the officer's hiding of identity by sending the follow request through an undercover agent account) deprived Dixson of the opportunity to make the kind of face-to-face judgments one could make in person when deciding whether to consent to a search. Mot. at 7–9. This argument is unavailing. The Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." Hoffa v. United States, 385 U.S. 293, 302 (1966). Further, "it is well established that an undercover officer may gain entrance [to information] by misrepresenting his identity and may gather evidence while there." United States v. Pollard, 215 F.3d 643, 649 (6th Cir. 2000). Other courts have rejected arguments identical to Dixson's in the social media context. See, e.g., United States v. Brooks, No. 12–CR–166 (RRM), 2012 WL 6562947 (E.D.N.Y. 2012) (holding that (i) the Government is entitled to conceal the identity of its agents, and (ii) the Government's access to a defendant's network after the defendant's acceptance of a "friend request" from an undercover agent did not implicate the defendant's Fourth Amendment rights); Sawyer, 786 F. Supp. 2d at 1356 ("Simply because the government obtained access to these files through use of a ruse does not render the consent involuntary.").

### III. CONCLUSION

For the reasons stated above, the Court denies Dixson's motion to suppress social media evidence (Dkt. 37).

SO ORDERED.

Dated: September 20, 2021         s/Mark A. Goldsmith
    Detroit, Michigan              MARK A. GOLDSMITH
                                        United States District Judge