UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DOMINIQUE DIXSON,

    Defendant.

_____/

Case No. 19-cr-20305

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**DENYING DEFENDANT DOMINIQUE DIXSON'S MOTION FOR BOND PENDING APPEAL (Dkt. 218)**

Following a jury trial, Defendant Dominique Dixson was convicted of two counts of possessing a firearm following a prior felony conviction in violation of 18 U.S.C. § 922(g). Judgment (Dkt. 212).[1] The Court sentenced Dixson to 120 months imprisonment. Id. at 2. Dixson later appealed the judgment. Notice of Appeal (Dkt. 215). Before the Court is Dixson's motion for bond pending his appeal under 18 U.S.C. § 3141(b)(1). For the reasons that follow, the Court denies Dixson's motion (Dkt. 218).[2]

## I. ANALYSIS

Under § 3143(b)(1), the Court must order that "a person who has been found guilty of an offense and sentenced to a term of imprisonment"—as Dixon has—be detained unless the Court (i) finds by "clear and convincing evidence" that the person is not likely to flee or pose a danger

---

[1] The Court has previously set forth the full background of this case. See, e.g., 5/28/20 Op. & Order (Dkt. 82).

[2] In addition to Dixson's motion, the briefing includes the Government's response (Dkt. 219).

1

to the safety of the community and (ii) the appeal is not for purposes of delay and raises a substantial question of law or fact that will likely result in reversal, a new trial, a sentence without imprisonment, or a reduced prison sentence.  With respect to the first prong of the analysis, "§ 3143 places the burden on the defendant because the section presumes dangerousness and requires that he overcome this presumption." United States v. Williams, 70 F.4th 359, 366 (6th Cir. 2023) (punctuation modified).  As to the second prong, "[a]n appeal raises a substantial question when it presents a close question or one that could go either way." United States v. Kincaid, 805 F. App'x 394, 395 (6th Cir. 2020) (punctuation modified).

Dixson contends that he meets both of § 3143's requirements because (i) his bonding would not pose a danger to the safety of the community and (ii) he raises a substantial question as to whether he was competent to represent himself during his trial.  The Court addresses each issue in turn.

**A. Whether Dixson is a Danger to the Safety of the Community**

The Government submits that that Dixson is not entitled to bond pending his appeal because he poses a danger to the safety of the community.  See Resp.  Dixson counters that his release would not pose a danger to the safety of the community because "GPS tether monitoring and confinement at a community corrections center will ensure the safety of the community." Mot. at PageID.2064.

The Court agrees with the Government.  The Government cites evidence of Dixson's extensive, and often violent, criminal history.  Resp. at 7–10.  As the Government points out, Dixson's felon-in-possession conviction in this case follows a pattern of criminal behaviors showing that he is prone to committing violence against others.   In 2010, Dixson pleaded guilty to assault with intent to do great bodily harm less than murder after he repeatedly shot at a vehicle

2

containing a woman, her two-year-old daughter, and three other young women. See Id. at 8; Presentence Investigation Report (PSR) ¶¶ 27, 39 (Dkt. 202).  Since then, Dixson's violent behavior has continued.  In 2011, Dixson pled guilty to domestic violence.  PSR ¶ 40.  Two years later, in 2013, he pled guilty to Aggravated Assault of a 17-year-old.  Id. ¶ 44.  Several weeks after that assault, Dixson fired shots at someone who had previously obtained an active personal protection order against Dixson, which led to Dixson pleading guilty to assault with a dangerous weapon.  Id. at ¶ 45.

In addition to this history of criminal behavior, Dixson has failed to comply with the terms of his resulting probation.  After being sentenced to probation for assault with intent to do great bodily harm, Dixson repeatedly violated his probation before he was eventually sentenced to prison following the revocation of his probation.  See Resp. at 8; PSR ¶ 39.

Tellingly, Dixson offers no contrary evidence to challenge the Government's position.  See Mot.  Although he asserts that GPS monitoring and "community confinement" will serve as adequate safeguards to prevent Dixson from committing further acts of violence, he provides no support for this assertion.  See Mot. at PageID.2064–2065.  And Dixson's history of bad behavior while on probation undercuts that position.  See PSR ¶¶ 39, 97 (detailing Dixson's prior instances of violating terms of probation and finding that "[p]rior probationary and prison sentences have not deterred this defendant from criminal behavior").

All told, Dixson's criminal history, coupled with his record of non-compliance with court-imposed supervision, shows that Dixson poses a danger to the safety of others in the community.  Dixson has not carried his burden of showing that he does not pose a danger to the safety of the community.

3

### B. Whether Dixson Raises a Substantial Question of Law

Although not entirely clear from his briefing, the thrust of Dixson's argument appears to be that that there is a substantial question of law or fact related to Dixson's competency to represent himself at trial. Mot. at PageID.2065–2066.

Dixson relies solely on Indiana v. Edwards, 554 U.S. 164 (2008) to support his view that his appeal raises a substantial question of law or fact. Dixson's reliance on Edwards is without merit. Edwards held that the Constitution does not prohibit states from insisting that defendants who are competent to stand trial but who suffer from mental illness such that they are not competent to represent themselves be represented by counsel. Edwards, 554 U.S. at 177–178. Edwards does not speak to the issue Dixson purports to raise on appeal, namely whether Dixson was competent to waive the right to counsel and represent himself at trial. See id.

With respect to that issue, a "defendant's decision to represent himself—and thereby waive counsel—must be knowingly and voluntarily made." Hill v. Curtin, 792 F.3d 670, 677 (6th Cir. 2015) (en banc). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Id. (punctuation modified).

The record shows that Dixson knowingly and voluntarily decided to represent himself at trial. The Court thoroughly questioned Dixson about his desire to represent himself and his understanding of his lack of legal training. Trial Tr. Vol. 2 at 38–39 (Dkt. 198). And the Court fully advised Dixson that he would be at a serious disadvantage at trial due to his lack of legal training. Id. Based on Dixson's responses to such questioning, the Court determined that Dixson understood his right to counsel and that he knowingly and voluntarily relinquished that right. Id.

at 40–41. Dixson asserts no argument or evidence to undermine the Court's prior finding that Dixson was competent to choose to represent himself.

Because Dixson fails to show that he has raised for appeal a "close question" regarding his competence to represent himself at his trial, he has not demonstrated that a substantial question of law would likely result in a reversal, new trial, or a reduced sentence.

## II. CONCLUSION

For the reasons set forth above, the Court denies Dixson's motion for bond pending his appeal (Dkt. 218).

SO ORDERED.

Dated: April 22, 2024　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge